<u>**NOT FOR PUBLICATION**</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| FABIO ABREU, | : | |
| | : | Civil Action No. 08-3013 (WJM) |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| PETER BARNES, et al., | : | |
| | : | |
| Defendants. | : | |

**APPEARANCES:**

Plaintiff <u>pro</u> <u>se</u>
Fabio Abreu
East Jersey State Prison
Rahway, NJ 07065

**MARTINI**, District Judge

Plaintiff Fabio Abreu, a prisoner confined at East Jersey State Prison in Rahway, New Jersey, seeks to bring this action <u>in forma pauperis</u> pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights.  Based on his affidavit of indigence and the absence of three qualifying dismissals within 28 U.S.C. §1915(g), the Court will grant Plaintiff's application to proceed <u>in forma pauperis</u> pursuant to 28 U.S.C. § 1915(a) and order the Clerk of the Court to file the Complaint.

At this time, the Court must review the Complaint to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be

granted, or because it seeks monetary relief from a defendant who is immune from such relief.

I.  <u>BACKGROUND</u>

The following factual allegations are taken from Plaintiff's Complaint and are accepted as true for purposes of this review.

Plaintiff alleges that he is a citizen of the Dominican Republic, currently confined at East Jersey State Prison pursuant to a criminal conviction.[1]  Plaintiff alleges that he was denied parole in 2006 and 2008.  Plaintiff alleges that the two named defendants, Peter Barnes and Edward Oskay of the New Jersey State Parole Board, denied him parole on the basis of his race, in violation of the Equal Protection Clause.

Plaintiff alleges, in shotgun fashion, numerous other claims, including claims that the defendants have failed to notify his consulate of his arrest and conviction, have violated United Nations treaties on human rights, and have violated N.J.S.A. 30:7D-1 (international transfer of criminals) and N.J.Adm.Code 10A:10-6.1 et seq. (same).  He also alleges that the existence of an immigration detainer prevents him from obtaining any classification status other than maximum security, prevents

---

[1] Although Plaintiff does not detail the nature of his conviction, the New Jersey Department of Corrections Inmate Locator website reflects that Plaintiff is serving a 30-year sentence, with a mandatory minimum term of 12 years, pursuant to a conviction for aggravated manslaughter.  The Inmate Locator website reflects that sentence was imposed on December 19, 1994.

him from earning good time credits, halfway house placement, community release, or work release.

Plaintiff asserts jurisdiction pursuant to 42 U.S.C. §§ 1983, 1985, and 1986, as well as principles of pendent jurisdiction.  He seeks immediate release and removal to the Dominican Republic, as well as compensatory and punitive damages.

## II.   STANDARDS FOR A SUA SPONTE DISMISSAL

This Court must dismiss, at the earliest practicable time, certain in forma pauperis and prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. § 1915(e)(2) (in forma pauperis actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions).

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).

A complaint must plead facts sufficient at least to "suggest" a basis for liability.  Spruill v. Gillis, 372 F.3d 218, 236 n.12 (3d Cir. 2004).  "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007) (citations omitted).

> While a complaint ... does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, see Papasan v. Allain, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level ... .

Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964-65 (2007) (citations omitted).  See also Morse v. Lower Merion School Dist., 132 F.3d at 906 (a court need not credit a pro se plaintiff's "bald assertions" or "legal conclusions").

A complaint is frivolous if it "lacks an arguable basis either in law or in fact."  Neitzke v. Williams, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)).  The standard for evaluating whether a complaint is "frivolous" is an objective one.  Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

Where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but

must permit the amendment.  <u>Denton v. Hernandez</u>, 504 U.S. 25, 34

(1992); <u>Grayson v. Mayview State Hospital</u>, 293 F.3d 103, 108 (3d

Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); <u>Shane

v. Fauver</u>, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal

pursuant to 42 U.S.C. § 1997e(c)(1)); <u>Urrutia v. Harrisburg

County Police Dept.</u>, 91 F.3d 451, 453 (3d Cir. 1996).

In addition, a complaint must comply with the Federal Rules

of Civil Procedure.  Rule 8(a)(2) requires that a complaint

contain "a short and plain statement of the claim showing that

the pleader is entitled to relief."  Rule 10(b) provides:

> A party must state its claims ... in numbered
> paragraphs, each limited as far as practicable to a
> single set of circumstances. ...  If doing so would
> promote clarity, each claim founded on a separate
> transaction or occurrence ... must be stated in a
> separate count or defense.

Rule 20(a)(2) controls the permissive joinder of defendants in

pro se prisoner actions as well as other civil actions.

> Persons ... may be joined in one action as defendants
> if:
>       (A) any right to relief is asserted against them
> jointly, severally, or in the alternative with respect
> to or arising out of the same transaction, occurrence,
> or series of transactions or occurrences; <u>and</u>
>       (B) any question of law or fact common to all
> defendants will arise in the action.

(emphasis added).  <u>See</u>, <u>e.g.</u>, <u>Pruden v. SCI Camp Hill</u>, 252

Fed.Appx. 436 (3d Cir. 2007); <u>George v. Smith</u>, 507 F.3d 605 (7th

Cir. 2007).

III.   SECTION 1983 ACTIONS

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State
> or Territory ... subjects, or causes to be subjected,
> any citizen of the United States or other person within
> the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other
> proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

IV.   ANALYSIS

A.   Challenge to Denial of Parole

Plaintiff alleges that Defendants Peter Barnes and Edward Oskay, members of the New Jersey State Parole Board, have discriminated against him by conspiring to deny him parole, on the basis of his race, while granting parole to other foreign nationals.  He seeks immediate release and removal to his native

country.  He also seeks damages for every day of "unlawful detention."

There is no federal constitutional right to parole; states, however, may create a parole entitlement protected by the Due Process Clause.  See Greenholtz v. Inmates of Nebraska Penal & Correctional Complex, 442 U.S. 1, 7 (1979).  See also Board of Pardons v. Allen, 482 U.S. 369 (1987); Prevard v. Fauver, 47 F.Supp.2d 539, 545 (D.N.J.), aff'd, 202 F.3d 254 (3d Cir. 1999).

Both federal and state courts have held that the New Jersey parole statute contains language creating an expectation of parole eligibility entitled to some measure of due process protections.  See Williams v. New Jersey State Parole Board, 1992 WL 32329, *2 (D.N.J. Feb. 4, 1992), aff'd, 975 F.2d 1553 (3d Cir. 1992); New Jersey State Parole Board v. Byrne, 93 N.J. 192, 203 (1983).  Judge Lifland of this Court has held that these cases remain good law even after taking into account the rule announced by the Supreme Court in Sandin v. Conner, 515 U.S. 472, 484 (1995) (citations omitted), that liberty interests created by state law "will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  See Watson v. DiSabato, 933 F.Supp. 390, 392-93

7

(D.N.J. 1996) (prisoner has liberty interest in parole decisions, including notice of determination, statement by the government, and opportunity for prisoner to submit written response).

The question remains what process is due. The Supreme Court of New Jersey has stated that

> Only a few basic procedures are required to deal with the risks of erroneous or arbitrary determinations in this context. We conclude that the process required is notice of the pendency of the parole disposition, a statement by the objecting judge or prosecutor of the reasons why the punitive aspects of the sentence have not been fulfilled, and the opportunity for the prisoner to respond in writing to that statement of reasons. No hearing, confrontation, or counsel issues are implicated here.

Byrne, 93 N.J. at 211.

Similarly, Judge Thompson of this Court has held that due process does not require that a hearing be held in exact accordance with the time period specified by the applicable New Jersey statutes. See Burgos v. New Jersey State Parole Board, 2000 WL 33722126, *8 (D.N.J. Aug. 7, 2000). In addition, while delay for an extended period of time may violate a prisoner's due process rights, "procedural errors are generally cured by holding a new hearing in compliance with due process requirements." Id. at *8-9. See also Johnson v. Paparozzi, 219 F.Supp.2d 635, 642 (D.N.J. 2002).

This is not to say that every allegation of constitutional violations in parole proceedings is the proper subject for an action under § 1983. In a series of cases beginning with Preiser

v. Rodriquez, 411 U.S. 475 (1973), the Supreme Court has analyzed the intersection of 42 U.S.C. § 1983 and the federal habeas corpus statute, 28 U.S.C. § 2254.  In Preiser, state prisoners who had been deprived of good-conduct-time credits by the New York State Department of Correctional Services as a result of disciplinary proceedings brought a § 1983 action seeking injunctive relief to compel restoration of the credits, which would have resulted in their immediate release.  411 U.S. at 476. The prisoners did not seek compensatory damages for the loss of their credits.  411 U.S. at 494.  The Court held that "when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus."  Id. at 500.

In Heck v. Humphrey, 512 U.S. 477 (1994), the Court addressed a corollary question to that presented in Preiser, whether a prisoner could challenge the constitutionality of his conviction in a suit for damages only under § 1983, a form of relief not available through a habeas corpus proceeding.  Again, the Court rejected § 1983 as a vehicle to challenge the lawfulness of a criminal judgment.

> [I]n order to recover damages for allegedly
> unconstitutional conviction or imprisonment, or for
> other harm caused by actions whose unlawfulness would
> render a conviction or sentence invalid, a § 1983

> plaintiff must prove that the conviction or sentence
> has been reversed on direct appeal, expunged by
> executive order, declared invalid by a state tribunal
> authorized to make such determination, or called into
> question by a federal court's issuance of a writ of
> habeas corpus, 28 U.S.C. § 2254.  A claim for damages
> bearing that relationship to a conviction or sentence
> that has not been so invalidated is not cognizable
> under § 1983.

512 U.S. at 486-87 (footnote omitted).  The Court further

instructed district courts, in determining whether a complaint

states a claim under § 1983, to evaluate whether a favorable

outcome would necessarily imply the invalidity of a criminal

judgment.

> Thus, when a state prisoner seeks damages in a § 1983
> suit, the district court must consider whether a
> judgment in favor of the plaintiff would necessarily
> imply the invalidity of his conviction or sentence; if
> it would, the complaint must be dismissed unless the
> plaintiff can demonstrate that the conviction or
> sentence has already been invalidated.  But if the
> district court determines that the plaintiff's action,
> even if successful, will not demonstrate the invalidity
> of any outstanding criminal judgment against the
> plaintiff, the action should be allowed to proceed, in
> the absence of some other bar to the suit.

512 U.S. at 487 (footnotes omitted).  The Court further held that

"a § 1983 cause of action for damages attributable to an

unconstitutional conviction or sentence does not accrue until the

conviction or sentence has been invalidated."  Id. at 489-90.

More recently, in Wilkinson v. Dotson, 544 U.S. 74 (2005),

the Supreme Court applied these principles to hold that claims

challenging the validity of general parole procedures are

cognizable under § 1983, so long as the prisoner does not seek

10

injunctive relief ordering his immediate or speedier release into the community, but rather seeks merely a new eligibility review or parole hearing.

Thus, for example, when a dispute "goes <u>only</u> to the manner in which the Board has considered plaintiff's parole, and [when] plaintiff does not claim that the review process must actually lead to his parole or to an earlier parole eligibility date, plaintiff's claim may proceed under 42 U.S.C. § 1983." <u>Johnson v. Fauver</u>, 786 F.Supp. 442, 445 (D.N.J.) (emphasis added), <u>aff'd</u>, 970 F.2d 899 (3d Cir. 1992); <u>see also Georgevich v. Strauss</u>, 772 F.2d 1078, 1086 (3d Cir. 1985), <u>cert. denied</u>, 475 U.S. 1028 (1986) (suit properly brought under § 1983 when it sought <u>only</u> the equal application of statutory furlough eligibility criteria, not plaintiff's release from incarceration); <u>Salaam v. Consovoy</u>, No. 99-cv-5692, 2000 WL 33679670, *2 (D.N.J. April 14, 2000) (a claim properly may be brought as a § 1983 action when the plaintiff is neither seeking an earlier parole eligibility date, nor challenging the parole board's calculation of his eligibility date).

Here, Plaintiff does not challenge the validity of general parole procedures, but alleges that the denial of his parole was based solely upon race discrimination, in violation of the Equal Protection Clause.  He alleges that his continued confinement is unlawful and specifically seeks release from confinement, as well

as monetary damages.  This claim is premature until such time as
the parole decision is otherwise invalidated through state
administrative or judicial procedures or a federal habeas corpus
action.

Plaintiff's reliance upon the equal-protection conspiracy
provisions at 42 U.S.C. §§ 1985 and 1986 does not alter this
result.[2]  Aside from the fact that the § 1985 and 1986 claims are
premature under the Preiser/Heck/Wilkinson line of cases,
Plaintiff has failed to allege any facts suggesting "conspiracy."

_____

[2] Plaintiff states that this Court has jurisdiction over his
claims under 42 U.S.C. §§ 1985 and 1986, in addition to § 1983.
Plaintiff does not otherwise explain the nature of his reliance
upon §§ 1985 or 1986.

Section 1985 provides, in relevant part:

(2) Obstructing justice; intimidating party, witness,
or juror.

... [I]f two or more persons conspire for the purpose
of impeding, hindering, obstructing, or defeating, in
any manner, the due course of justice in any State or
Territory, with intent to deny to any citizen the equal
protection of the laws, ...

(3) Depriving persons of rights or privileges

If two or more persons in any State or Territory
conspire ... for the purpose of depriving, either
directly or indirectly, any person or class of persons
of the equal protection of the laws, or of equal
privileges and immunities under the laws; ...  the
person so injured or deprived may have an action for
the recovery of damages occasioned by such injury or
deprivation, against any one or more of the
conspirators.

42 U.S.C. § 1985(2), (3).

In 2007, the Supreme Court addressed the question of what a
plaintiff must plead in order to state a conspiracy claim under
§ 1 of the Sherman Act.  See Bell Atlantic Corp. v. Twombly, 127
S.Ct. 1955, 1964-66 (2007).  The Court first reviewed historical
pleading requirements.

> Federal Rule of Civil Procedure 8(a)(2) requires only
> "a short and plain statement of the claim showing that
> the pleader is entitled to relief," in order to "give
> the defendant fair notice of what the ... claim is and
> the grounds upon which it rests."  While a complaint
> attacked by a Rule 12(b)(6) motion to dismiss does not
> need detailed factual allegations, a plaintiff's
> obligation to provide the "grounds" of his
> "entitle[ment] to relief" requires more than labels and
> conclusions, and a formulaic recitation of the elements
> of a cause of action will not do, see Papasan v.
> Allain, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d
> 209 (1986) (on a motion to dismiss, courts "are not
> bound to accept as true a legal conclusion couched as a
> factual allegation").  Factual allegations must be
> enough to raise a right to relief above the speculative
> level, on the assumption that all the allegations in
> the complaint are true (even if doubtful in fact).

Twombly, 127 S.Ct. at 1964-65 (citations and footnote omitted).
The Court then applied these general standards to the Sherman Act
conspiracy claim.

> In applying these general standards to a § 1
> [conspiracy] claim, we hold that stating such a claim
> requires a complaint with enough factual matter (taken
> as true) to suggest that an agreement was made.  Asking
> for plausible grounds to infer an agreement does not
> impose a probability requirement at the pleading stage;
> it simply calls for enough fact to raise a reasonable
> expectation that discovery will reveal evidence of
> illegal agreement.  And, of course, a well-pleaded
> complaint may proceed even if it strikes a savvy judge
> that actual proof of those facts is improbable, and
> "that a recovery is very remote and unlikely."  In
> identifying facts that are suggestive enough to render

13

a § 1 conspiracy claim plausible, we have the benefit
of the prior rulings and considered views of leading
commentators, already quoted, that lawful parallel
conduct fails to bespeak unlawful agreement.  It makes
sense to say, therefore, that an allegation of parallel
conduct and a bare assertion of conspiracy will not
suffice.  Without more, parallel conduct does not
suggest conspiracy, and a conclusory allegation of
agreement at some unidentified point does not supply
facts adequate to show illegality.  Hence, when
allegations of parallel conduct are set out in order to
make a § 1 claim, they must be placed in a context that
raises a suggestion of a preceding agreement, not
merely parallel conduct that could just as well be
independent action.

The need at the pleading stage for allegations
plausibly suggesting (not merely consistent with)
agreement reflects the threshold requirement of Rule
8(a)(2) that the "plain statement" possess enough heft
to "sho[w] that the pleader is entitled to relief."  A
statement of parallel conduct, even conduct consciously
undertaken, needs some setting suggesting the agreement
necessary to make out a § 1 claim; without that further
circumstance pointing toward a meeting of the minds, an
account of a defendant's commercial efforts stays in
neutral territory.  An allegation of parallel conduct
is thus much like a naked assertion of conspiracy in a
§ 1 complaint: it gets the complaint close to stating a
claim, but without some further factual enhancement it
stops short of the line between possibility and
plausibility of "entitle[ment] to relief."

Twombly, 127 S.Ct. at 1965-66 (citations and footnotes omitted).

The Court of Appeals for the Third Circuit has held, in the

context of a § 1983 civil rights action, that the Twombly

pleading standard applies outside the § 1 antitrust context in

which it was decided.  See Phillips v. County of Allegheny, 515

F.3d 224, 234 (3d Cir. 2008) ("we decline at this point to read

Twombly so narrowly as to limit its holding on plausibility to

the antitrust context").

14

Context matters in notice pleading.  Fair notice under
Rule 8(a)(2) depends on the type of case -- some
complaints will require at least some factual
allegations to make out a "showing that the pleader is
entitled to relief, in order to give the defendant fair
notice of what the ... claim is and the grounds upon
which it rests."  Indeed, taking <u>Twombly</u> and the
Court's contemporaneous opinion in <u>Erickson v. Pardus</u>,
127 S.Ct. 2197 (2007), together, we understand the
Court to instruct that a situation may arise where, at
some point, the factual detail in a complaint is so
undeveloped that it does not provide a defendant the
type of notice of claim which is contemplated by
Rule 8.  Put another way, in light of <u>Twombly</u>, Rule
8(a)(2) requires a "showing" rather than a blanket
assertion of an entitlement to relief.  We caution that
without some factual allegation in the complaint, a
claimant cannot satisfy the requirement that he or she
provide not only "fair notice," but also the "grounds"
on which the claim rests.

<u>Phillips</u>, 515 F.3d at 232 (citations omitted).

Here, Plaintiff's conclusory allegations of "conspiracy"

amount to nothing more than allegations of "parallel conduct," if

that, without any allegations of facts suggesting a preceding

meeting of the minds among the alleged conspirators.  For this

reason, also, the Complaint fails to state a claim under either

the second clause of § 1985(2) or under § 1985(3).

Plaintiff has failed to state a claim under § 1985.

Accordingly, he fails to state a § 1986 claim.  <u>See Koorn v.</u>

<u>Lacey Twp.</u>, 78 Fed. Appx. 199, 208 (3d Cir. 2003) (citing <u>Mian v.</u>

<u>Donaldson, Lufkin & Jenrette Sec. Corp.</u>, 7 F.3d 1085, 1088 (2d

Cir. 1993)); <u>Grimes v. Smith</u>, 776 F.2d 1359, 1363 n.4 (7th Cir.

1985).

For the foregoing reasons, all of these equal protection challenges to the parole decision must be dismissed without prejudice until such time as Plaintiff's parole decision is invalidated through state administrative or judicial procedures or, following exhaustion of such state procedures, through a federal habeas corpus action.

B.   Treaty Claims

Plaintiff alleges that the defendants violated the Vienna Convention on Consular Relations,[3] see 21 U.S.T. 77, 596 U.N.T.S. 261 (April 24, 1963), by failing to notify his consulate of his arrest and criminal sentence, and unspecified United Nations human rights declarations.

The United States is a signatory to the Vienna Convention on Consular Relations ("Vienna Convention"), April 24, 1963, 21 U.S.T. 77, 101 T.I.A.S. No. 6820, 596 U.N.T.S. 261, 1967 WL 18349, which came into force on April 24, 1964, and which was ratified by the United States on October 22, 1969.  See Cong. Rec. 30997 (1969).

The Preamble states that "the purpose of such privileges and immunities [set forth herein] is not to benefit individuals, but

---

[3] Specifically, Plaintiff asserts that Defendants violated the "Vienna Convention of Consular Relations of 1963, Subchapter 7."  No such subchapter exists.  Article 7 relates to the exercise of consular functions in a third State, other than the sending or receiving State.

16

to ensure the efficient performance of functions by consular

posts on behalf of their respective States."

Article 36 of the Vienna Convention provides, in pertinent

part:

> 1.  With a view to facilitating the exercise of
> consular functions relating to nationals of the sending
> State: ...
> (b) if [a detained person] so requests, the competent
> authorities of the receiving State shall, without
> delay, inform the consular post of the sending State
> if, within its consular district, a national of that
> State is arrested or committed to prison or to custody
> pending trial or is detained in any other manner.  Any
> communication addressed to the consular post by the
> person arrested, in prison, custody or detention shall
> also be forwarded by the said authorities without
> delay.  The said authorities shall inform the person
> concerned without delay of his rights under this
> subparagraph;
> (c) consular officers shall have the right to visit a
> national of the sending State who is in prison, custody
> or detention, to converse and correspond with him and
> to arrange for his legal representation.  ...
> 2.  The rights referred to in paragraph 1 of this
> Article shall be exercised in conformity with the laws
> and regulations of the receiving State, subject to the
> proviso, however, that the said laws and regulations
> must enable full effect to be given to the purposes for
> which the rights accorded under this Article are
> intended.

Vienna Convention, Article 36.

The provisions of Article 36 have been implemented in

federal regulations, including 28 C.F.R. § 50.5(a)(1) ("In every

case in which a foreign national is arrested the arresting

officer shall inform the foreign national that his consul will be

advised of his arrest unless he does not wish such notification

to be given.").  See also 28 C.F.R. § 50(a)(2) (requiring the

17

arresting agent to inform the U.S. Attorney of the arrest and of the arrestee's wishes regarding consular notification); 28 C.F.R. § 50.5(a)(3) (directing the U.S. Attorney to notify the appropriate consul in accordance with the arrestee's wishes); 8 C.F.R. § 236.1(e) (requiring the INS to notify every detained alien of the right to communicate with consul).

Courts that have addressed the issue generally are in agreement that the Vienna Convention on Consular Relations does not give rise to judicially-enforceable private damage actions. See, e.g., Gandara v. Bennett, 528 F.3d 823 (11th Cir. 2008); McPherson v. United States, Civil Action No. 07-6119 (SDW), 2008 WL 2985448 (D.N.J. July 31, 2008) (collecting cases). Contra, Jogi v. Voges, 480 F.3d 822 (7th Cir. 2007). Neither the Supreme Court nor the Court of Appeals for the Third Circuit has resolved this issue. See Sanchez-Llamas v. Oregon, 126 S.Ct. 2669, 2677-78 (2006); In re Obi, 240 Fed.Appx. 1000, 1001 n.2, 2007 WL 2683025 (3d Cir. 2007). This Court is persuaded by the reasoning of those courts finding that the text and content of the Vienna Convention on Consular Relations do not indicate an intent to create individual rights subject to vindication through judicial actions for damages.

In any event, Plaintiff has failed to allege any facts suggesting that the named Defendants, parole officials, were in any way involved in his arrest or prosecution or were obligated

18

under the Vienna Convention to notify Plaintiff's consulate of his arrest and conviction.  Nor has this Court located any case suggesting that parole officials are required to notify consular officials of a foreign national's eligibility for parole or participation in parole proceedings.  <u>Cf.</u>, <u>e.g.</u>, <u>Robinson v. Warden</u>, 250 Fed.Appx. 462, 2007 WL 2949132 (3d Cir. 2007) (foreign national's alleged right under the Vienna Convention on Consular Relations to consular notification of his arrest or detention do not extend to notification that he has been charged with a violation of prison rules).

Finally, to the extent Plaintiff argues that a failure to comply with the terms of the Vienna Convention on Consular Relations renders his conviction invalid or otherwise entitles him to release, this claim must be raised in a petition for writ of habeas corpus, following exhaustion of state remedies.

The allegations that Defendants have violated United Nations human rights treaties is too vague to state a claim.

These claims must be dismissed.

C.    <u>Immigration Detainer</u>

Plaintiff alleges that an immigration detainer[4] has been

---

[4] An immigration detainer:

serves to advise another law enforcement agency that the Department seeks custody of an alien presently in the custody of that agency, for the purpose of arresting and removing the alien.  The detainer is a request that such agency advise the Department, prior

lodged against him, preventing him from participating in various prison programs and from earning good-time credits.

Again, to the extent Plaintiff contends that the immigration detainer unlawfully affects his eligibility for good-time credits, that attack on the length of his sentence must be brought as a habeas corpus action following exhaustion of state remedies.

With respect to his eligibility for a lower-security placement, halfway house, community release or work release programs, the incidental effect of this detainer on his eligibility for such program participation does not violate any constitutional right to due process or equal protection.

A liberty interest protected by the Due Process Clause may arise from either of two sources:  the Due Process Clause itself or enacted law.  <u>See</u> <u>Hewitt v. Helms</u>, 459 U.S. 460, 466 (1983); <u>Asquith v. Department of Corrections</u>, 186 F.3d 407, 409 (3d Cir. 1999).  With respect to convicted and sentenced prisoners, "[a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process

---

to release of the alien, in order for the Department to arrange to assume custody, in situations when gaining immediate physical custody is either impracticable or impossible.

8 C.F.R. § 287.7(a).

Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." Montanye v. Haymes, 427 U.S. 236, 242 (1976), quoted in Hewitt, 459 U.S. at 468 and Sandin v. Conner, 515 U.S. 472, 480 (1995).  Cf. Washington v. Harper, 494 U.S. 210, 221-22 (1990) (prisoner possesses liberty interest under the Due Process Clause in freedom from involuntary administration of psychotropic drugs); Vitek v. Jones, 445 U.S. 480, 493-94 (1980) (prisoner possesses liberty interest under the Due Process Clause in freedom from involuntary transfer to state mental hospital coupled with mandatory treatment for mental illness, a punishment carrying "stigmatizing consequences" and "qualitatively different" from punishment characteristically suffered by one convicted of a crime).

It is well established that a prisoner possesses no liberty interest arising from the Due Process Clause in a particular custody level or place of confinement.  See, e.g., Olim v Wakinekona, 461 U.S. 238, 245-46 (1983); Hewitt, 459 U.S. at 466-67; Meachum v. Fano, 427 U.S. 215, 224-25 (1976); Montanye, 427 U.S. at 242.

Governments, however, may confer on prisoners liberty interests that are protected by the Due Process Clause.  "But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due

Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." <u>Sandin</u>, 515 U.S. at 484 (finding that disciplinary segregation conditions which effectively mirrored those of administrative segregation and protective custody were not "atypical and significant hardships" in which a state conceivably might create liberty interest). Plaintiff does not allege either that some statute confers a liberty interest in being free from the constraints imposed against prisoners subject to an immigration detainer or that the conditions under which he is confined present "atypical and significant hardships." Thus, Plaintiff cannot establish any deprivation of his liberty interests under the Due Process Clause.

This issue has been litigated frequently with respect to federal prisoners. For example, the regulation limiting participation in the early release program established in 18 U.S.C. § 3621(b) has withstood challenge by persons subject to immigration detainers. United States Code Title 18 Section 3621(b) requires the Bureau of Prisons to "make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse." 18 U.S.C. § 3621(b). As an incentive for prisoners to successfully complete the program, "[t]he period a prisoner convicted of a nonviolent offense remains in custody

22

after successfully completing a treatment program may be reduced by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve." 18 U.S.C. § 3621(e)(2)(B). Pursuant to these statutory sections, and in an exercise of the discretion vested in the Director of the Federal Bureau of Prisons, the Bureau has promulgated regulations prescribing certain additional early release criteria, inter alia excluding INS detainees from consideration for early release. 28 C.F.R. § 550.58(a)(1)(I). This is analogous to the type of program limitation that Plaintiff mentions.

In Lopez v. Davis, 531 U.S. 230 (2001), the Supreme Court held that it was a proper exercise of discretion by the Bureau of Prisons to categorically deny eligibility for early release to prisoners with "a prior felony or misdemeanor conviction for homicide, forcible rape, robbery, or aggravated assault, or child sexual abuse offenses," 28 C.F.R. § 550.58(a)(1)(iv), or to prisoners whose current offense is one of certain enumerated felonies involving the use or attempted use of force, or involving the carrying, possession, or use of a firearm or other dangerous weapon, or involving sexual abuse upon children, 28 U.S.C. § 550.58(a)(1)(vi). In reaching this conclusion, the Court first noted that the language of § 3621(e)(2)(B) grants the Bureau discretion to reduce a prisoner's sentence for successful

23

completion of a substance abuse treatment program, but fails to

define any parameters by which the Bureau should exercise that

discretion.

> In this familiar situation, where Congress has enacted
> a law that does not answer "the precise question at
> issue," all we must decide is whether the Bureau, the
> agency empowered to administer the early release
> program, has filled the statutory gap "in a way that is
> reasonable in light of the legislature's revealed
> design." We think the agency's interpretation is
> reasonable both in taking account of preconviction
> conduct and in making categorical exclusions.

Lopez, 531 U.S. at 242 (citing, inter alia, Chevron, U.S.A., Inc.

v. National Resources Defense Council, Inc., 467 U.S. 837, 842

(1984))(other citations omitted). Thus, "the statute's

restriction of early release eligibility to nonviolent offenders

does not cut short the considerations that may guide the Bureau."

Lopez, 531 U.S. at 242. See also Magnin v. Beeler, 110 F.Supp.2d

338 (D.N.J. 2000) (upholding 28 C.F.R. §550.58(a)(1)(vi), before

Lopez, as a valid exercise of the Bureau's discretion).

The Court of Appeals for the Eighth Circuit has stated that

it sees no difference between the categorical exclusion examined

by the Supreme Court in Lopez v. Davis and the categorical

exclusion of prisoners subject to an immigration detainer in 28

C.F.R. § 550.58(a)(1)(I), holding that the latter is also within

the Bureau's discretion. United States v. Lopez-Salas, 266 F.3d

842, 848 (8th Cir. 2001). Here, the programs mentioned by

Plaintiff, those involving work release, halfway house, or lower

security placement, are ones in which "custody" is a consideration, similar to the early release program, and Plaintiff has not suggested any reason why it is unreasonable for the prison authorities to take into account an immigration detainer in determining eligibility for such programs. This Court agrees with the Eighth Circuit that the existence of an immigration detainer is a legitimate factor to consider in determining eligibility for custody-related programming.

Finally, the exclusion of persons subject to an immigration detainer does not violate the Equal Protection Clause. Program limitations such as those challenged here classify prisoners as those who are subject to custodial considerations (including those who have detainers lodged against them) and those who are not, not on the basis of alienage. See McLean v. Crabtree, 173 F.3d 1176, 1185-86 (9th Cir. 1999), cert. denied, 528 U.S. 1086 (2000). Accordingly, "the Equal Protection Clause requires only that the classification rationally further a legitimate state interest." See Nordlinger v. Hahn, 505 U.S. 1, 10 (1992).

Excluding prisoners subject to detainers or other custodial considerations from participation in programs involving custody issues is rationally related to prison authorities' legitimate interest in preventing such prisoners from fleeing. See McLean v. Crabtree, 173 F.3d at 1185-86. Accordingly, the detainer, and

the program limits it triggers, do not violate the Equal
Protection Clause.

These claims will be dismissed.

D.   <u>Request for Immediate Removal</u>

Plaintiff requests an order for his immediate removal to the
Dominican Republic.

Prior to 1996, the Immigration and Nationality Act ("INA")
generally required incarcerated aliens to serve their sentences
before being deported (now "removed").  <u>See</u> 8 U.S.C. § 1252(h)
(1995) (in relevant part, "An alien sentenced to imprisonment
shall not be deported until such imprisonment has been terminated
by the release of the alien from confinement.").  In the
Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"),
Pub.L. No. 104-132, § 438, 110 Stat. 1275 (1996), and again five
months later in the Omnibus Appropriations Act of 1997, Pub.L.
No. 104-208, Div. C, §§ 305-06, 1996 U.S.C.C.A.N. (110 Stat.)
3009-598, 3009-599, 3009-607, Congress amended § 1252(h) and
recodified it at 8 U.S.C. § 1231(a)(4)(B), so that it now grants
the Attorney General discretion to depart from the general rule
and to remove certain aliens prior to the completion of their
terms of incarceration.

> (A) ... Except as provided in section 259(a) of Title
> 42 and [subparagraph (B)], the Attorney General may not
> remove an alien who is sentenced to imprisonment until
> the alien is released from imprisonment.  ...

(B) ...  The Attorney General is authorized to remove
an alien ... before the alien has completed a sentence
of imprisonment -- (i) ... if the Attorney General
determines that (I) the alien is confined pursuant to a
final conviction for a nonviolent offense (other than
certain excepted offenses) and (II) the removal of the
alien is appropriate and in the best interest of the
United States; ...

(D) No cause or claim may be asserted under this
paragraph against any official of the United States or
of any State to compel the release, removal, or
consideration for release or removal of any alien.

8 U.S.C. § 1231(a)(4)(A), (B), (D).

Every federal court to consider this provision has

determined that the statute vests in the Attorney General the

sole discretion and authority to make early removal decisions and

that no private right of action for immediate removal exists.

See, e.g., United States v. Marin-Castaneda, 134 F.3d 551, 556

(3d Cir.), cert. denied, 523 U.S. 1144 (1998) (addressing the

issue in the context of a prisoner's request for downward

departure, under United States Sentencing Guideline § 5K2.0,

based upon the prisoner's willingness to consent to immediate

removal); United States v. Vergara, 133 F.3d 919, 1998 WL 17029

(4th Cir. 1998) (unpubl.); Thye v. United States, 109 F.3d 127,

128-29 (2d Cir. 1997); Koos v. Holm, 204 F.Supp.2d 1099, 1108-09

(W.D. Tenn. 2002); United States v. Bioyo, 1998 WL 850815 (N.D.

Ill. Dec. 2, 1998); United States v. Lozada, 1996 WL 502200 (E.D.

Pa. 1996).

Thus, deferral of decision on the issue of Plaintiff's status until the completion of his term of incarceration does not violate the Constitution or laws of the United States, and Plaintiff has no private right of action to compel a determination prior to the completion of his term of incarceration.

This claim will be dismissed.

E.   <u>Pendent State Law Claims</u>

Plaintiff alleges that the Defendants have violated N.J.S.A. 30:73-1 (authorizing the Commission of the Department of Corrections to take action under treaties providing for transfer of foreign national criminals) and N.J.A.C. 10A:10-6.1, et seq. (same).

Pursuant to 28 U.S.C. § 1367(c)(3), where a district court has dismissed all claims over which it has original jurisdiction, it may decline to exercise supplemental jurisdiction over a related state law claim.  The Court of Appeals for the Third Circuit has held that, where all federal claims are dismissed before trial, "the district court <u>must</u> decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so."  <u>Hedges v. Musco</u>, 204 F.3d 109, 123 (3d Cir. 2000) (citations omitted).  As no such extraordinary

circumstances appear to be present, this Court will dismiss the state law claims without prejudice.

## V.   CONCLUSION

For the reasons set forth above, all claims will be dismissed, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), for failure to state a claim.  An appropriate order follows.

s/William J. Martini

_____

William J. Martini
United States District Judge

Dated: 2/4/09